# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

IN THE MATTER OF:                                    CHAPTER 13
EDMUND MCGRATH                                       CASE NO: 10-56595
KELLY MCGRATH, Debtors                               JUDGE THOMAS J. TUCKER
2689 IVY HILL DRIVE
COMMERCE TOWNSHIP, MI 48382
SSN: XXX-XX-6224, SSN: XXX-XX-9078

## TRUSTEE'S OBJECTION TO PROOF OF CLAIM OF
## JPMORGAN CHASE BANK, N.A., PACER CLAIM #19

NOW COMES, the Chapter 13 Trustee, Tammy L. Terry, pursuant to 11 U.S.C. Section 704(5) and Federal Rule of Bankruptcy procedure 3007 and hereby objects to the Proof of Claim by **JPMORGAN CHASE BANK, N.A.,** PACER Claim #19 for the following reasons:

1. The debtor filed for Chapter 13 relief on **May 19, 2010.** This matter was confirmed on **October 06, 2010.**

2. On or about **April 03, 2013, JPMORGAN CHASE BANK, N.A.,** PACER Claim #19 filed an unsecured proof of claim in the amount of **$118,297.65** bearing account number **4270.**

3. The deadline for all creditors (except a governmental unit) to file a proof of claim was **September 27, 2010.**

4. The claimant failed to file its proof of claim timely as required pursuant to F.R.Bank.P.3002(c) & 3007.

5. As such, the Trustee is unable to administer these proceedings.

WHEREFORE, the Chapter 13 Trustee request that this Honorable Court disallow the proof of claim for **JPMORGAN CHASE BANK, N.A.,** PACER Claim #19 in the amount of **$118,297.65.**

OFFICE OF THE CHAPTER 13 TRUSTEE - DETROIT

June 11, 2013          **/S/ TAMMY L. TERRY (P46254)**
                       TAMMY L. TERRY, Chapter 13 Trustee
                       /S/ KIMBERLY SHORTER-SIEBERT (P49608)
                       /S/ MARILYN R. SOMERS-KANTZER (P52488)
                       535 Griswold, Suite 2100
                       Detroit, MI 48226
                       (313) 967-9857
                       mieb_ecfadmin@detl3.net

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION - DETROIT

IN THE MATTER OF:
EDMUND MCGRATH
KELLY MCGRATH, Debtors
2689 IVY HILL DRIVE
COMMERCE TOWNSHIP, MI 48382
SSN: XXX-XX-6224, SSN: XXX-XX-9078

CHAPTER 13
CASE NO: 10-56595
JUDGE THOMAS J. TUCKER

## NOTICE OF OBJECTION TO
## JPMORGAN CHASE BANK, N.A., PACER CLAIM #19

The Chapter 13 Standing Trustee has filed an objection to your claim in this bankruptcy case

**Your claim may be reduced, modified, or denied.** **You should read these papers carefully and discuss them with your attorney, if you have one.**

If you do not want the court to deny or change your claim, then on or before**(SEVEN (7) DAYS PRIOR TO HEARING)**, YOU OR YOUR LAWYER MUST:

1.  File with the court a written response to the objection, explaining your position, at
    **U.S. Bankruptcy Court**
    **211 W. Fort Street Detroit, MI 48226**

    If you mail your response to the Court for filing, you must mail it early enough so that the court will receive it on or before the date stated above. All attorneys are required to file pleadings electronically.

    You must also mail a copy to:
    **EDMUND MCGRATH & KELLY MCGRATH, 2689 IVY HILL DRIVE, COMMERCE TOWNSHIP, MI 48382**

    FRANK INDUSTRIES, PLLC, 4 PARKLANE BLVD., SUITE 350, DEARBORN, MI 48126
    **TAMMY L. TERRY, 535 GRISWOLD, SUITE 2100, DETROIT, MI 48226**
    JPMORGAN CHASE BANK, N.A., C/O FIVE LAKES AGENCY, INC., P.O. BOX 80730, ROCHESTER, MI 48308

2.  Attend the hearing on the objection, scheduled to be held on **Thursday, July 25, 2013** at **11:00:00AM** in **Judge Tucker's Courtroom 1925, U.S. Bankruptcy Court, 211 W. Fort St., Detroit, Michigan 48226,** unless your attendance is excused by mutual agreement between yourself and the objector's attorney. (Unless the matter is disposed of summarily as a matter of law, the hearing shall be a pre-trial conference only; neither testimony nor other evidence will be received A pre-trial scheduling order may be issued as a result of the pre-trial conference.)

**If you or your attorney do not take these steps, the Court may deem that you do not oppose the objection to**

June 11, 2013

OFFICE OF THE CHAPTER 13 TRUSTEE - DETROIT

/S/ TAMMY L. TERRY (P46254)

TAMMY L. TERRY, Chapter 13 Trustee
/S/ KIMBERLY SHORTER-SIEBERT (P49608)
/S/ MARILYN R. SOMERS-KANTZER (P52488)
535 Griswold, Suite 2100
Detroit, MI 48226
(313) 967-9857
mieb_ecfadmin@det13.net

B 10 (Official Form 10) (12/12)

| UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF MICHIGAN | | **PROOF OF CLAIM** |
|---|---|---|
| Name of Debtor:<br>Edmund McGrath<br>Kelly McGrath | Case Number: 10-56595 | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. §503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>J.P. MORGAN CHASE BANK, N.A. | **COURT USE ONLY** |
| Name and address where notices should be sent:<br>Five Lakes Agency, Inc.<br>J.P. MORGAN CHASE BANK, N.A.<br>P.O. Box 80730<br>Rochester, MI 48308<br>Telephone Number: 855-824-1000     e-mail: efile@fivelakesagency.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>  *(if known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone Number:          e-mail: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

1. **Amount of Claim as of Date Case Filed:**     $118,297.65

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** Deficiency Balance on a Mortgage
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>4270 | 3a. Debtor may have scheduled account as:<br><br>_____<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

| 4. **Secured Claim** (See instruction #4)<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.<br><br>Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe: _____<br><br>Value of Property: $_____<br><br>Annual Interest Rate:_____  ☐ Fixed or ☐ Variable<br>(when case was filed) | **Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**<br><br>$_____<br><br>Basis for perfection:<br>_____<br><br>Amount of Secured Claim:  $_____<br><br>Amount Unsecured:  $_____ |
|---|---|

5. **Amount of Claim Entitled to Priority under 11 U.S.C. 507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4). | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>**Amount entitled to priority:** |
|---|---|---|
| ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8). | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).  $_____ |

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instructions #8)

Check the appropriate box.

☐ I am the creditor.    ☑ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                          or their authorized agent.    (See Bankruptcy Rule 3005.)
                                                           (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Kelly J. Schellig
                      Cassandra L. Carroll
Title:         Agents for Creditor                        /s/ Kelly J. Schellig           4/3/13
Company:  Five Lakes Agency, Inc                      /s / Cassandra L Carroll
Address and telephone number (if different from notice address above):     (Signature)                          (Date)

Telephone number:                        email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claims Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

B 10 (Attachment A) (12/12)

# HOME EQUITY LINE OF CREDIT <sup>sm</sup>
## AGREEMENT AND DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Cal/Col | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $118,700.00 | 03-15-2006 | 03-15-2036 | 4270 | | 4270 | | |

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** KELLY J MCGRATH and EDMUND R MCGRATH
2689 IVY HILL DRIVE
COMMERCE TOWNSHIP, MI 48382

**Lender:** JPMorgan Chase Bank, NA
Home Equity and Consumer Lending Division
1111 Polaris Parkway
Columbus, OH 43240

---

**CREDIT LIMIT: $118,700.00**                    **DATE OF AGREEMENT: March 15, 2006**

**Introduction.** This HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through JPMorgan Chase Bank, NA. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean JPMorgan Chase Bank, NA. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay JPMorgan Chase Bank, NA, or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Mortgage" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until March 15, 2036 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of Ohio, following the perfection of the Mortgage, and the meeting of all of our other conditions and will continue as follows: ten (10) years. The Draw Period is also referred to as the "First Payment Stream". You may obtain credit advances during this period ("Draw Period"). After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain credit advances. The length of the repayment period is as follows: twenty (20) years. The Repayment Period is also referred to as the "Second Payment Stream". You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** During the Draw Period your Regular Payment will be equal to the amount of the FINANCE CHARGE accrued for the billing cycle for which the statement is rendered. You will make 120 of these payments. Your payments will be due Monthly. Advances to your credit line or an increase in the ANNUAL PERCENTAGE RATE may increase your Regular Payment. If you make only the Regular Payment during your Draw Period, the principal balance outstanding on your line will not be reduced as a consequence of your payment of only the FINANCE CHARGE due.

During the Repayment Period, your minimum monthly payments will be (a) the unpaid principal balance divided by the remaining number of scheduled payments, plus (b) the amount of finance charge accrued plus any fees and any amounts past due. You will make monthly payments as noted below during the Repayment Period.

| Range of Balances | Number of Payments | Amortization Period |
|---|---|---|
| All Balances | 240 | 240 payments |

Your "Minimum Payment" will be the Regular Payment, plus any amounts past due and all other charges. In addition, we have the right to require you to pay fees and charges assessed on the Credit Line Account with and in addition to the Minimum Payment. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement. If your credit line balance falls below $100.00 during the Repayment Period, you agree to pay your balance in full.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to principal, interest, fees and other charges in any order. If your Credit Line Account has principal balances outstanding at different rates, we may apply principal payments first to outstanding balances at the lowest applicable rate before applying principal payments to balances accruing interest at a higher rate. We may apply all payments and credits in accordance with our standard operating procedures and with the requirements of applicable law. Notwithstanding anything to the contrary in this Agreement, we may apply our standard operating procedures to verify that we have received good funds after we received your payments before releasing the payment amounts as available credit on your Credit Line Account.

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to close of business on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of One Hundred Eighteen Thousand Seven Hundred & 00/100 Dollars ($118,700.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. You understand that your Credit Limit is imposed solely for our protection and you agree to hold us harmless against any loss incurred for honoring a credit advance in excess of your Credit Limit.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Mortgage or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Mortgage for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your property. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your property. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

   **Credit Line Checks.** Writing a preprinted "credit line check" that we will supply to you.

   **Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

   **Credit Card Access.** Using your "credit card" to receive cash advances or to make purchases.

   **ATM Access.** Using your "credit card/ATM card" at any of our designated ATM locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one of you telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor credit line checks in the following circumstances:

   **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the credit line check.

   **Post-dated Checks.** Your credit line check is post-dated. If a post-dated credit line check is paid and as a result any other check is returned or not paid, we are not responsible for any losses or damages you incur.

**Stolen Checks.** Your credit line checks have been reported lost or stolen.

**Unauthorized Signatures.** Your credit line check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the credit line check.

If we pay any credit line check under these conditions, you must repay us, subject to applicable laws, for the amount of the credit line check. The credit line check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return credit line checks along with your periodic billing statements; however, your use of each credit line check will be reflected on your periodic statement as a credit advance. We do not "certify" credit line checks drawn on your Credit Line.

**Limitations on the Use of Credit Cards.** We reserve the right not to honor credit cards in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the credit card charge.

**Stolen Credit Cards.** Your credit cards have been reported lost or stolen.

**Unauthorized Signatures.** Your credit card is not used by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Credit Line charge.

If we pay any advance requested by use of the credit card under these conditions, you must repay us, subject to applicable laws, for the amount of the advance. The advance itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of an advance is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. Your use of the credit card will be reflected on your periodic statement as a credit advance.

**Limitations on the Use of ATM Cards.** We reserve the right not to honor credit card/ATM cards in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by honoring the credit card/ATM card charge.

**Stolen ATM Cards.** Your credit card/ATM cards have been reported lost or stolen.

**Unauthorized Signatures.** Your credit card/ATM card is not used by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we honored the Credit Line charge.

If we pay any advance requested by use of the credit card/ATM card under these conditions, you must repay us, subject to applicable laws, for the amount of the advance. The advance itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of an advance is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. Your use of the credit card/ATM card will be reflected on your periodic statement as a credit advance.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Card Limitations.** The following transaction limitations will apply to your Credit Line and using a Credit Card.

**Other Transaction Requirements.**
You agree not to use your credit card to initiate a transaction involving Internet gambling, regardless of the jurisdiction in which you are located, including locations within the United States, and the Bank has the right to refuse a transaction which it reasonably believes involves Internet gambling.

The maximum limit of each transaction per day may not exceed your current available balance or $99,999.99, whichever is less. For security reasons, there may be times when we further limit this amount, request authentication by the merchant or bank of your identity or decline the transaction even if you have the available funds.

**ATM Access Limitations.** The following transaction limitations will apply to your Credit Line and using an Automated Transaction Machine ("ATM") access card.

**Other Transaction Requirements.** Transactions conducted at ATMs are governed by the limitations of the individual ATM owners and may be subject to ATM fees and transaction limitations imposed by the ATM owner.

**Credit Line credit line check and in Person Request Limitations.** There are no transaction limitations for the writing of credit line checks or requesting an advance in person.

**Authorized Signers.** The words "Authorized Signer" for credit line checks, credit cards and credit card/ATM cards as used in this Agreement mean and include each person who signs this agreement.

**Lost credit line checks, credit cards and credit card/ATM cards.** If you lose your credit line checks, credit cards or credit card/ATM cards or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (800) 800-5626.

**Liability For Unauthorized Use.** You may be liable for the unauthorized use of your credit card access device which accesses your Credit Line. You will not be liable for unauthorized use that occurs after you notify us or our designee at JPMorgan Chase Bank, NA, P.O. Box 901008, Fort Worth, TX 76101-2008., orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for unauthorized use of your credit card will not exceed $50.00.

If you use an access card which debits a checking account (or other consumer asset account) but also draws on an overdraft line of credit, Regulation E provisions apply, as well as sections 226.13(d) and (g) of Regulation Z. In such a transaction, you might be liable for up to $50.00 under Regulation Z. Also, you might be liable for $50.00, $500.00, or an unlimited amount under Regulation E, or a lesser amount under applicable state law. Please refer to your electronic fund transfers disclosure for liability limitations and error-resolution procedures for transactions covered by the federal Electronic Fund Transfers Act.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by an Open-End Mortgage dated March 15, 2008, to us on real property located in PINELLAS County, State of Florida, all the terms and conditions of which are hereby incorporated and made a part of this Agreement

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Mortgage, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "daily balance" method. To get the daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us the "daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we add together the periodic FINANCE CHARGES for each day in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent index which is the Prime Rate. Prime Rate means the base rate on corporate loans posted by at least 75% of the USA's largest banks known as The Wall Street Journal Prime Rate and published in The Wall Street Journal (or alternate publication if required) on each publication day of each month. If more than one rate is published as the prime rate, the Prime Rate will be the highest rate called "the Prime Rate" (the "Index"). We will use the most recent index value available to us as of the date of any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Agreement, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your First Payment Stream, we subtract a margin from the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we subtract a margin from the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your Second Payment Stream. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate during the Second Payment Stream will take the form of a higher Minimum Payment amount. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect on the first calendar day following the publication of a new Prime Rate. In no event will the corresponding ANNUAL PERCENTAGE RATE be more than the greater of 21.00000% or the maximum rate we would be allowed to charge or collect by federal law or the law of the State of Ohio (as applicable). On the day we prepared this document, the Index was 7.500% per annum, and therefore the Initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are estimated below. Your Initial Periodic Rate and corresponding ANNUAL PERCENTAGE RATE will be based on the Index in effect on your closing date.

**Current Rates for the First Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
| --- | --- | --- | --- |
| All Balances | -0.260 % | 7.240 % | 0.01984 % |

**Current Rates for the Second Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
| --- | --- | --- | --- |
| All Balances | -0.260 % | 7.240 % | 0.01984 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds. No matter what else may be stated in any other provision of this Agreement or in any other document you may have with us, you do not agree or intend to pay, and we do not agree or intend to charge any interest or fee for the HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT which would in any way cause us to contract for, charge or collect more for the Credit Line Account than the maximum we would be permitted to charge or collect by any applicable federal or Ohio state law. Any such excess interest or unauthorized fee will be applied first to reduce the unpaid principal balance of the Credit Line Account, and when the principal has been paid in full, be refunded to you.

**Conversion Option.** This Agreement contains an option to convert the interest rate from a variable rate with interest rate limits to a fixed rate as calculated below. The following information is representative of conversion features recently offered by us.

**ANNUAL PERCENTAGE RATE Increase.** Your ANNUAL PERCENTAGE RATE may increase if you exercise this option to convert to a fixed rate.

**Conversion Periods.** You can exercise the option to convert to a fixed rate only during the following period or periods: At any time during the Draw Period, with our written consent, any one of you may convert the repayment schedule for either the entire outstanding balance on the Credit Line Account or any portion thereof (but not less than $1,000.00) for a term up to the lesser of thirty (30) years or the remaining originally scheduled term of your Credit Line Account (a "Lock"). Therefore, you can take a Lock of up to thirty (30) years only if you obtain a lock on the date you opened this Credit Line Account. You may have up to five (5) Locks outstanding at any one time but may not make additional advances to any one Lock once established. The total outstanding balance on any Lock will not be subject to the "Credit Advances" and "Minimum Payment" section of this Agreement. Instead, when each Lock is established, we will determine the payment amount that would be required to pay off the balance in that Lock in substantially equal payments over the term of the Lock at the fixed rate applicable to that Lock. Therefore, your Minimum Payment due each month will be the sum of the fixed payment amount for each Lock plus the minimum payment amount for the balance of your Account which has not been designated as a Lock (the "Credit Line"), calculated using the formula set forth in the "Minimum Payment" section of this agreement. Additional payments in any Lock may be made at any time but shall not affect your obligation to pay succeeding lock payments as long as any amount is still owing on the Lock. Any payment made upon your outstanding principal balance in any Lock will be available on the Credit Line for you to draw against upon posting of such payment prior to the maturity date. If your outstanding balance includes one or more Locks as well as a balance on your Credit Line, unless you properly designate otherwise on a payment coupon we provide you, then each additional payment we receive will be first applied to the Credit Line until paid in full. Also, unless you properly designate otherwise on a payment coupon we provide you, if there is no Credit Line to which to apply an additional principal payment, then the additional principal payment will be applied to the Lock first opened until paid in full. Additional lock payments will not affect your obligation to pay succeeding lock payments as long as any amount is still owing on the Lock unless we otherwise agree in writing.

Upon conversion, the converted outstanding balance will accrue interest at a fixed rate as calculated in the Rate Determination section and will amortize over a specific period of time.

**Conversion Fees.** You will be required to pay the following fees at the time of conversion to a fixed rate: We may charge you $50.00 for each Lock that we set up at your request.

**Rate Determination.** The fixed rate will be determined as follows: We will start with the "Lock Index," which is the yield on U.S. Treasury securities having a comparable period of maturity to the scheduled maturity of the requested Lock as of the 15th day of the month immediately preceding the month in which you request your Lock. If the Lock Index becomes unavailable during the term of this Agreement, we may designate a substitute index after notice to you. We will then add 10 percentage points to the Lock Index. Your fixed lock rate (the "Fixed Lock Rate") will be the lowest of the following: the amount arrived at from the foregoing calculation, 21%, or the maximum rate we are allowed to charge you at the time of your lock under federal law, which for the purposes of 12 U.S.C. Section 85 incorporates Ohio law. We will then review the rates and terms available for a comparable Home Equity Loan offered by us at the time of your request based upon a like loan to value ratio, loan term and your credit profile at that time. If, after that review we determine that we can offer you a lower rate than the Fixed Lock Rate, we will give you the lower rate. We will provide a complete disclosure of the terms of the Lock at the time the Lock is established.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Annual Fee.** A nonrefundable Annual Fee of $50.00 will be charged to your Credit Line at the following time: The Annual Fee for the first year is waived. The remaining Annual Fees will be assessed beginning on your first anniversary date and will continue annually throughout the Draw Period.

**Payment of Closing Costs.** If you elect to charge your Credit Line Account to pay the closing costs associated with your Credit Line (such as title insurance premiums, appraisal fees, credit report fees, and recording fees), the total of these charges will be reflected as "closing costs" on your first periodic billing statement.

**Returned Items.** You may be charged $25.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason.

**Fee to Stop Payment.** Your Credit Line Account may be charged $15.00 when you request a stop payment on your account.

**Overlimit Charge.** Your Credit Line Account may be charged $25.00 for each credit advance in excess of your Credit Limit. This includes writing a credit line check in excess of your available balance.

statement. If your payment is late we may charge you $25.00.

**Fee to Close Account.** If you close or terminate your Credit Line Account, you may be charged the following: .

(1) Your Credit Line Account may be charged the lesser of 1% of your Credit Line or $400.00 if you close or terminate your Credit Line Account within three (3) years from the Loan Date shown above. You will not be charged this fee if we suspend or terminate your Credit Line Account. You may prepay your Credit Line Account without paying this fee as long as you do not close or terminate your Credit Line Account.

(2) Conditional Waiver of Fee(s). You acknowledge that you had the option to pay the Total Fee(s) Conditionally Waived disclosed below at closing, and you elected to have us pay such fee(s). We agree to conditionally waive such fee(s) unless you close or terminate your Credit Line Account within three (3) years of the Loan Date shown above. If you close or terminate your Credit Line Account within eighteen (18) months from the Loan Date, you will repay to us one hundred percent (100%) of such fee(s). If you close or terminate your Credit Line Account after eighteen (18) months from the Loan Date but within three (3) years from the Loan Date, you will repay to us fifty percent (50%) of such fee(s). You will not be required to repay any portion of such fee(s) if we suspend or terminate your Credit Line Account. You may prepay your Credit Line Account without repaying any portion of such fee(s) as long as you do not close or terminate your Credit Line Account. The Fee to Close Account described above is in addition to any amount you must repay under this paragraph.

The term "Mortgage Tax," as used in the Fee(s) Conditionally Waived paragraph below, means the borrower's portion of any tax paid to a state, county or other government office as a condition to record the security instrument that secures your Credit Line Account.

**Lien Release Fees.** In addition to all other charges, you agree, to the extent not prohibited by law, to pay all governmental fees for release of our security interests in collateral securing your Credit Line. You will pay these fees at the time the lien or liens are released. The estimated amount of these future lien release fees is $10.00.

**Fee(s) Conditionally Waived.** You acknowledge that we have paid the following fee(s) on your behalf to open your Credit Line Account, and we will conditionally waive such fee(s) in accordance with the Conditional Waiver of Fee(s) paragraph above:

| | |
|---|---|
| Mortgage Tax | $1,100.00 |
| Total | $1,100.00 |

**Other Charges.** Your Credit Line Account may be charged the following other charges:

Account Return Check Charge. We may charge you a fee for the return of a check because you are delinquent or in default in any respect concerning the Credit Line Account. The amount of this other charge is: 25.00.

The charges listed in the following Security Interest Charges paragraph (if such paragraph is present) are part of the closing or settlement costs associated with your Credit Line.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and subject to any notice requirement or other limitation of applicable law require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen:

(1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition.

(2) You do not meet the repayment terms of this Credit Agreement.

(3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Credit Line Account is reached.

**Expenses.** To the extent not prohibited by applicable law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights, shall become a part of the loan payable on demand, and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate the automatic stay or injunction) and appeals, to the extent permitted by applicable law.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all credit line checks and any other access devices. Any use of credit line checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of credit line checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all credit line checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount

owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: JPMorgan Chase Bank, N.A., P.O. Box 901008 Fort Worth, TX 76101-2008.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law. You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Mortgage. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: JPMorgan Chase Bank, N.A. P.O. Box 901008 Fort Worth , TX 76101-2008

**Periodic Review.** We will conduct a periodic review of your Credit Line Account, based on credit and financial information we may obtain or receive from you from time to time.

**Collection Costs.** If you are in default under the terms of this Agreement, we may take all lawful action under applicable law to collect the money you owe us. It is our intent to collect only those attorney's fees, and those expenses, court and collection costs permitted by the laws of your state and the United States (including the bankruptcy laws of the United States). You agree to pay only those collection costs and attorney's fees that we actually incur and that we may lawfully collect from you. If the laws of your state will not let us collect all or some of these collection costs and attorney's fees from you, we will not do so. To the extent the laws of your state prohibit us from contracting with you to collect such fees or costs or prohibit us from including this provision in your agreement with us, this provision is severed from this Agreement, is of no force and effect and your contract will be read and interpreted without this provision except to the extent federal law may now or hereafter preempt the law of your state.

**FOREIGN TRANSACTIONS.** Lender will charge, and Borrower will pay, in U.S. dollars for all foreign transactions at the exchange rate in effect at the time the transaction is entered to Borrower's Credit Line Account, including any special currency exchange charges.

**IDENTITY OF LENDER.** Lender is JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America, with its main offices located in Columbus, Ohio.

**Check Safekeeping.** Lender will retain your cancelled Credit Line Checks, and will not return them with your Credit Line Account statement. You agree that your cancelled Credit Line Checks will not be returned in your statement and that the original cancelled Credit Line Checks may be destroyed after a reasonable period of time as determined by Lender. You agree that by maintaining the original Credit Line Check or a copy thereof on your behalf, Lender has otherwise made the Credit Line Check available to you in a reasonable manner. You may request a copy of any cancelled Credit Line Check. If for any reason Lender cannot return a copy of your Credit Line Check or satisfy your needs through other means, you agree that Lender will not be liable for more than the face amount of the Credit Line Check.

**Information Sharing.** Our privacy policy, which has been provided to you describes our information sharing practices and gives directions on how to opt out, or direct us to limit the sharing of Personal Information (as defined in the privacy policy) about you with other companies or organizations. You hereby agree that, if you choose not to exercise the opt outs described in the privacy policy, you will be deemed to have authorized us to share any Personal Information about you (including information related to any of the products or services you may have with any JPMorgan Chase & Co. affiliate) with other companies or other organizations.

**Supplement to Charges to your Credit Line.** If you do not pay the fees and charges for which you are obligated or that we may charge under the terms of this Agreement at the time you are required to pay them, we have the right, but not the obligation, to charge your Credit Line for those past due fees and charges to the extent permitted by the law governing this transaction. Any amount so charged to your Credit Line will be a credit advance, bear interest at the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE until paid, and will decrease the funds available, if any, under the Credit Line. This paragraph supplements and amends but does not replace the Charges to your Credit Line paragraph.

**Stop Payments.** You may ask us to "stop payment" on a credit line check. If you do, you must tell us the name of the payee, the amount, date and number of the credit line check and who signed it. We are not bound by a stop payment order unless we have a reasonable opportunity to act on it and will not be liable for failing to stop payment if we used ordinary care. You agree to indemnify us and will pay all costs and expenses we incur (including reasonable attorney fees) as a result of honoring your stop payment order. This indemnity will survive any termination of this Agreement. You agree to pay the fee indicated in the Conditions Under Which Other Charges May Be Imposed section of this document for each request to "stop payment" on a credit line check.

**CREDIT CARD ACCESS.** Notwithstanding anything contained in this Agreement to the contrary, credit card access may not be available in your state. If credit card access is permitted in your state and becomes available, we will so advise you and will issue a credit card to you upon your request. Any credit card issued in connection with the Home Equity Line of Credit account is NOT a debit card. The words "credit card" as used in this Agreement mean the VISA or MasterCard that may be issued to you as an access device to your Credit Line Account. VISA is a registered service mark of Visa, U.S.A., Inc. MasterCard is a registered service mark of MasterCard International Incorporated.

**Fee Waivers.** If you convert an initial advance to a fixed rate (a "Lock") immediately upon opening this Credit Line Account, we will waive the conversion fee for that initial Lock. If you convert a Lock of at least $25,000 immediately upon opening this Credit Line Account, we will waive the Annual Fee for as long as that initial Lock remains open.

**Supplement to Conversion Periods Paragraph.** Notwithstanding anything to the contrary contained in the Conversion Periods paragraph, any Locks you take immediately at closing (subject to any applicable rescission period) cannot exceed ninety five percent (95%) of your Credit Limit.

**Additional Restriction on Access Devices.** You may not use your credit line checks, your credit card, or any other credit access device made available to make payments on your Credit Line Account.

**Governing Law.** This agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Michigan, except for matters related to interest and the exportation of interest, which matters will be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations, and opinions) and laws of the State of Ohio. However, if there ever is a question about whether any provision of the agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction which is evidenced by this and other related documents has been approved, made and funded, and all necessary documents have been accepted by Lender in the State of Ohio.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Mortgage, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Mortgage or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity loan...

Should Know About Home Equity Lines of Credit," given with the application.

**BORROWER:**

X _____
KELLY J MCGRATH, Individually

X _____
EDMUND R MCGRATH, Individually

Effective Disbursement Date: <u>March 15, 2006.</u>

---

### Florida Documentary Stamp Tax

Florida documentary stamp tax in the amount required by law has been paid with respect to this Agreement on the Mortgage securing this Agreement.

Florida Documentary Stamp Tax
Required by Law in the Amount of $ 18,700.00
Has Been Paid or Will Be Paid Directly to
The Department of Revenue.
Certificate of Registration No. 3829 351658

# BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

> JPMorgan Chase Bank, N.A.
> Credit Line Billing Notices
> P.O. Box 901008
> Fort Worth, TX 76101-2008

or at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

> Your name and account number.

> The dollar amount of the suspected error.

> Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### Special Rule for Credit Card Purchases

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

> (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

> (b) The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement of the property or services.

LASER PRO Lending, Ver. 5.19.40.08  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - MI/NY  F:\apps\cfi\apps\CFI\LPL\D20.FC  TR-59614270  PR-101NOSPL

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

| | |
|---|---|
| **IN THE MATTER OF:**<br>EDMUND MCGRATH<br>KELLY MCGRATH, Debtors<br>2689 IVY HILL DRIVE<br>COMMERCE TOWNSHIP, MI 48382<br>SSN: XXX-XX-6224, SSN: XXX-XX-9078 | CHAPTER 13<br>CASE NO: 10-56595<br>JUDGE THOMAS J. TUCKER |

### CERTIFICATE OF MAILING

I hereby certify that on the date indicated below, copies of **TRUSTEE'S OBJECTION TO PROOF OF CLAIM TO JPMORGAN CHASE BANK, N.A., PACER Claim #19** and **NOTICE OF OBJECTION TO CLAIM** were served via Electronic Court Filing and/or mailed to the parties at the stated addresses below.

_6/14/13_

FRANK INDUSTRIES, PLLC
4 PARKLANE BLVD.
SUITE 350
DEARBORN, MI 48126

EDMUND MCGRATH
KELLY MCGRATH
2689 IVY HILL DRIVE
COMMERCE TOWNSHIP, MI 48382

OFFICE OF THE CHAPTER 13 TRUSTEE - DETROIT

/S/ JUATANE MILLER

Chapter 13 Standing Trustee Clerk
535 Griswold, Suite 2100
Detroit, MI 48226
(313) 967-9857
mieb_ecfadmin@det13.net

JPMORGAN CHASE BANK, N.A.
C/O FIVE LAKES AGENCY, INC.
P.O. BOX 80730
ROCHESTER, MI 48308